# AFFIDAVIT IN SUPPORT OF AN
# APPLICATION FOR A CRIMINAL COMPLAINT

I, Christian Garcia, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the United States Drug Enforcement Administration ("DEA") and have been so employed since February 2023, and I am assigned to the Caribbean Division San Juan, Puerto Rico. I am currently assigned to the Organized Crime Drug Enforcement Task Force Caribbean Corridor Strike Force ("CCSF").[1] As such, I am empowered under 21 U.S.C. § 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure and arrest warrants. I graduated from the full-time residence "Basic Agent Training Program" in Quantico, Virginia. The Basic Agent Training Program focuses on law courses, search and seizure warrants, enforcement of federal drug laws, identification of controlled substances, surveillance, counter-surveillance, firearms training and the smuggling of drugs.

2. As a Special Agent with the DEA, I have participated in drug trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21 of the United States Code. I have participated in surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses, and others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking.

---

[1] The Organized Crime Drug Enforcement Task Force Caribbean Corridor Strike Force is a multi-agency task force comprised of agents from the Drug Enforcement Administration, Homeland Security Investigations, the United States Coast Guard Investigative Services, United States Marshal Services, and other agencies. CCSF operates in the District of Puerto Rico and targets the smuggling of shipments of narcotics into Puerto Rico, the transshipment of drugs to the continental United States, and the laundering of drug proceeds using bulk cash smuggling and sophisticated money laundering activities.

1

3. Based on my training and experience and information from more experienced investigators, I am familiar with narcotics traffickers' methods (*modus operandi)* of operation including the distribution, storage, and transportation of narcotics, and the collection of money proceeds of narcotics trafficking. I am also familiar with methods employed by large narcotics organizations to thwart detection by law enforcement, including the use of vague and coded language, cellular telephone technology, counter surveillance, false or fictitious identities, and encoded communications.

4. This affidavit is submitted in support of a criminal complaint charging Oriel Omar MATOS-MENDEZ with: (1) Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or more of Cocaine in violation of 21 U.S.C. § 841(a)(1).

5. Because this Affidavit is submitted for the limited purpose of establishing probable cause, I have not included all details of every aspect of this investigation. I have set forth only the facts that I believe are necessary to establish probable cause of the commission of federal crimes or offenses. I am thoroughly familiar with the information contained in this Affidavit, either through personal investigation or discussions with other law enforcement officers involved in the investigation.

## **PROBABLE CAUSE**

6. Based on my personal participation in this investigation, and discussions with other law enforcement officers and reviews of reports general by local and federal law enforcement officials, I learned the following:

7. On March 13, 2025, a DEA Confidential Source (CS) informed Agents that Oriel Omar MATOS-MENDEZ (hereinafter referred as MATOS-MENDEZ) was interested in the purchase of ten (10) kilograms of cocaine. On Friday March 28, 2025, the DEA coordinated a dry

meet with the CS and MATOS-MENDEZ at the Ceiba Bakery Restaurant, in San Juan, PR, in order to coordinate the purchase of the ten (10) kilograms of cocaine. MATOS-MENDEZ agreed to pay the CS $9,000 per kilogram of cocaine totaling $90,000 in United States Currency.

8. During the meeting, MATOS-MENDEZ told the CS that MATOS-MENDEZ had the money for three (3) kilograms of cocaine and would pay the remaining seven (7) within two (2) days of the delivery of the 10 kilograms of cocaine. MATOS-MENDEZ and the CS agreed to have the three (3) kilograms ($25,000) of cocaine be paid by MATOS-MENDEZ's associate (UNF UNL) in New York City, NY prior to the delivery of the cocaine in Puerto Rico and the remaining $2,000 to be paid by MATOS-MENDEZ on the date of the delivery of the ten (10) kilograms of cocaine.

9. Agents coordinated with the DEA New York Division Office to conduct the money pick up with MATOS-MENDEZ's associate. On March 2, 2025, at approximately 6:30 pm, MATOS-MENDEZ's associate (UNF UNL) met with a DEA New York Office CS (CS2) who picked up $25,000 in US Currency from MATOS-MENDEZ's associate.

10. On April 3, 2025, at approximately 12:35 p.m., the CS instructed MATOS-MENDEZ to meet at parking lot of the Capri-Store in Matadero, San Juan, PR to conduct a drug transaction of 10 kilograms of cocaine. Subsequently, Agents established surveillance in the Capri-Store in Matadero, San Juan, PR, as the CS and an Under Cover (UC) agent arrived to the parking lot in an Official Government Vehicle (OGV).

11. At approximately 12:37 p.m., the CS and the UC learned that MATOS-MENDEZ was near the Capri-Store in Matadero, San Juan, PR.

12. At approximately 12:37 p.m., Agents observed MATOS-MENDEZ arrive to the Capri-Store parking lot in a grey Toyota Tacoma Bearing Puerto Rico license plate 958329 as the

driver and lone occupant of the vehicle. Subsequently, Agents observed MATOS-MENDEZ exit his vehicle and meet with the CS and UC beside the OGV. MATOS-MENDEZ walked back to his vehicle (Toyota Tacoma) to retrieve what appeared to be bulked cash (later determined to be US Currency) and handed the cash to the CS. The CS opened the OGVs trunk and unzipped the duffle bag containing the ten (10) SHAM cocaine. The CS showed the SHAM cocaine that was inside the duffle bag to MATOS-MENDEZ, and while doing so, the CS alerted agents. Puerto Rico Police Bureau (PRPB) SWAT, utilizing an Official Government Vehicle, turned their red/blue lights and sirens and were able to safely take MATOS-MENDEZ into custody.

13. Upon arrest and search incident to arrest of MATOS-MENDEZ's person, agents located a loaded Glock 43 pistol on his person.

14. At approximately 2:04 pm, agents read MATOS-MENDEZ his Miranda Rights verbatim and agreed to talk to agents without a lawyer present. MATOS-MENDEZ said he had come with an agreement to purchase the ten (10) kilograms of cocaine that MATOS-MENDEZ was planning to send to the Continental United States.

*CONTINUES ON NEXT PAGE*





Duffle bag containing the 10 kilo-bricks cocaine

**CONCLUSION**

15. Based upon my training, experience, and my participation in this investigation, I respectfully believe that probable cause exists to show that Oriel Omar MATOS-MENDEZ committed violations of Federal Law, to wit: (1) Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or more of Cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii), and 846; and Attempt to Distribute Five Kilograms of More of Cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii), and 846.

Respectfully submitted,

CHRISTIAN GARCIA
Digitally signed by CHRISTIAN GARCIA
Date: 2025.04.03 17:34:22 -04'00'

Christian Garcia
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirement of Fed. R. Crim. P. 4.1. by telephone at 5:48 p.m. on April 3, 2025, in San Juan, Puerto Rico.

Digitally signed by Hon. Giselle López-Soler

HON. GISELLE LÓPEZ-SOLER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO